# STATE OF TENNESSEE
## THE CIRCUIT COURT FOR KNOX COUNTY

### SUMMONS

2018 FEB -2 PM 4: 24

KNOX COUNTY CIRCUIT COURT
CATHERINE F. SHANKS, CLERK

ANNE WUNSCHEL,                    PLAINTIFF    )

vs.

CIVIL ACTION NO. _____1-3RC-18

RICHARD FRITTS, RANDALL ERIC FRITTS,
MICHAEL PHILLIP FRITTS, FRITTS FINANCIAL, LLC,
THOMAS KEITH WORMSLEY, BROOKSTONE CAPITAL
MANAGEMENT, LLC, SECURITIES AMERICA, INC., and
HORTER INVESTMENT MANAGEMENT
COMPANY, LLC,                     DEFENDANTS   )

To the above named defendant (s):

You are hereby summoned and required to serve upon Anne Wunschel, care of her attorney, Brent R. Laman,, whose address is 408 N. Cedar Bluff Rd., Suite 500, Knoxville, TN 37923, an answer to the complaint herewith served upon you within 30 days after service of this summons and complaint upon you, exclusive of the day of service. A copy of the answer must be filed with the court either before or within a reasonable time after service. If you fail to do so, judgment by default can be taken against you for the relief demanded in the complaint.

Issued and attested this the _____2_____ day of February, 2018

_____Catherine Shanks_____
Catherine F. Shanks, Clerk

_____Ann Capell_____
Deputy Clerk

ADA
FOR ASSISTANCE CALL
865 / 215-2952
TTY: 865 / 215-2497

### NOTICE

To the defendant(s):

Tennessee law provides a Ten Thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek counsel of a lawyer.

### SERVICE INFORMATION

To the process server: Defendant **Thomas Keith Wormsley** can be served at: **112 Glenleigh Court, Suite 4, Knoxville, TN 37934 (work) or 12433 Body Station Rd, Knoxville, TN 37934 (home).**

### RETURN

I received this summons on the_____day of_____,_____.

I hereby certify and return that on the_____day of_____,_____. I:

[ ] served this summons and complaint on the defendant_____in the following manner:
_____.

[ ] failed to serve this summons within 30 days after its issuance because: _____
_____.

The Americans with Disabilities Act prohibits discrimination against any qualified individual with a disability. The Tennessee Judicial Branch does not permit discrimination against any individual on the basis of physical or mental disability in accessing its judicial programs. In accordance with the Americans with Disabilities Act, if necessary, the Tennessee Judicial Branch will provide reasonable modifications in order to access all of its programs, services and activities to qualified individuals with disabilities.

If you require a modification to access the judicial program and/or have special needs because of a qualified disability, you must submit a written **Request for Modification** to the Local Judicial Program ADA Coordinator listed below at least five (5) business days prior to the date of the judicial proceeding, if possible. A form is available from the Local Judicial Program ADA Coordinator or from the Tennessee Judicial Program ADA Coordinator (www.tncourts.gov)

If you need assistance, have questions or need additional information, please contact the Local Judicial Program ADA Coordinator:

> Pat Carson, Compliance Officer
> Knox County Human Resources Office
> Suite 360, City-County Building
> 400 Main Street, Knoxville, Tennessee 37902
> Voice Phone: (865) 215-2952       TTY: (865) 215-2497

If you need assistance, have questions or need additional information, you may also contact the Tennessee Judicial Program ADA Coordinator:

> Pamela Taylor, Manager/Coordinator
> State Judicial ADA Program
> Administrative Office of the Courts
> Nashville City Center
> Suite 600, 511 Union Street
> Nashville, Tennessee 37219
> Telephone (615) 741-2687       FAX: (615)741-6285

The Tennessee Judicial Branch's Americans with Disabilities Act Policy regarding access to judicial program, as well as a Request for Modification form may be found online at www.tncourts.gov.

FILED

2018 FEB -2 PM 4:12

KNOX COUNTY CIRCUIT COURT
CATHERINE F. SHANKS, CLERK

| | |
|---|---|
| ANNE WUNSCHEL, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1-39-18 |
| | ) |
| RICHARD FRITTS, | ) |
| RANDALL ERIC FRITTS, | ) |
| MICHAEL PHILLIP FRITTS, | ) |
| FRITTS FINANCIAL, LLC, | ) |
| THOMAS KEITH WORMSLEY, | ) |
| BROOKSTONE CAPITAL | ) |
| MANAGEMENT, LLC, | ) |
| SECURITIES AMERICA, INC., and | ) |
| HORTER INVESTMENT | ) |
| MANAGEMENT COMPANY, LLC | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DAMAGES

The Plaintiff, Anne Wunschel, by and through counsel, hereby files her Complaint for Damages against Defendants Richard Fritts ("R. Fritts"), Randall Eric Fritts ("E. Fritts"), Michael Philip Fritts ("M. Fritts"), Thomas Keith Wormsley ("Wormsley") (collectively referred to as the "Individual Defendants"), and Fritts Financial, LLC ("Financial"), Brookstone Capital Management, LLC ("Brookstone"), Securities America, Inc. ("SAI"), and Horter Investment Management Company, LLC ("Horter")(collectively referred to as the "Entity Defendants") and for grounds would state as follows:

### I. PARTIES

1.       Mr. Richard R. Fritts is a natural person who, upon information and belief, resides at 2263 Henge Pointe Lane, Knoxville, Tennessee 37922. An alternative address

where R. Fritts may be found is 112 Glenleigh Court, Suite 4, Knoxville, Tennessee 37934.

2.     Mr. Randall Eric Fritts is a natural person believed to reside at 1624 Spring Oak Lane, Knoxville, Tennessee 37922. An alternative address for E. Fritts is 112 Glenleigh Court, Suite 3, Knoxville, Tennessee 37934.

3.     M. Fritts is a natural person believed to reside at 3454 Orange Blossom Lane, Knoxville, Tennessee 37932. An alternative address for M. Fritts is 112 Glenleigh Court, Suite 4, Knoxville, Tennessee 37934.

4.     Mr. Thomas K. Wormsley is a natural person believed to reside at 12433 Boyd Station Road, Knoxville, Tennessee 37934. An alternative address for Mr. Wormsley is 112 Glenleigh Court, Suite 2, Knoxville, Tennessee 37934.

5.     Fritts Financial, LLC is a limited liability company formed under the laws of the State of Tennessee with a principal office at 112 Glenleigh Court, Suite 4, Knoxville, Tennessee 37934, and can be served with process through its registered agent, Mr. Richard Fritts at 112 Glenleigh Court, Suite 4, Knoxville, Tennessee 37934.

6.     Securities America, Inc. is a Delaware corporation with a principal office address at 12325 Port Grace Boulevard, La Vista, Nebraska 68128, and can be served with process through its registered agent, Corporate Creations Network, Inc. at 205 Powell Place, Brentwood, Tennessee 37027.

7.     On information and belief, Brookstone Capital Management, LLC is a limited liability company formed under the laws of the state of Illinois with a principal office address at 1745 South Naperville Road, Suite 200, Wheaton, Illinois 60189 and may be served with process through its registered agent, Dean Zayed at 1745 South Naperville Road, Suite 200, Wheaton, Illinois 60189, or through the Tennessee Secretary of State as

2

its agent.

8.     Horter Investment Management Company, LLC is believed to be a limited liability company formed under the laws of the state of Ohio with a principal office at 11726 Seven Gables Road, Symmes Township, Cincinnati, Ohio 45249, and may be served with process through its registered agent Mercury Agent Company at 250 West Street, Suite 700, Columbus, Ohio 43215, or through the Tennessee Secretary of State as its agent.

## II. JURISDICTION AND VENUE

9.     This Court has personal jurisdiction over the Individual Defendants in that each of the individual Defendants is a resident of Knox County, Tennessee and has conducted business primarily in Knox County, Tennessee.

10.     This Court has personal jurisdiction over Fritts Financial, LLC in that Fritts Financial has a principal office in Knox County, Tennessee, and is organized under the laws of the state of Tennessee.

11.     This Court has personal jurisdiction over Securities America, Inc. because SAI has done business in Knox County, intentionally directed business in Tennessee, and maintained and paid employees in Knox County, namely Wormsley, and subjected itself to the jurisdiction of this Court.

12.     This Court has jurisdiction over Brookstone Capital Management, LLC because Brookstone has done business in Knox County and maintains and pays employees acting on its behalf in Knox County, namely E. Fritts and M. Fritts.

13.     This court has personal jurisdiction over Horter because Horter has done business in Knox County and has maintained and paid employees acting on its behalf in

Knox County, namely E. Fritts.

14.    The Court has subject matter jurisdiction and venue is proper in this Court because the acts giving rise to the causes of action alleged in this Complaint occurred exclusively or primarily in Knox County, and Knox County has the most substantial relationship to the underlying facts which give rise to this lawsuit.

## III. UNDERLYING FACTS

A.    **Points of Contact and Woodbridge Investments**

15.    Defendant R. Fritts is the sole owner and managing member of Fritts Financial, LLC.

16.    Finanical was first formed under the laws of the state of Tennessee on May 24, 2016, and first became effective as a distinct entity on July 1, 2016.

17.    According to Financial's website, Mr. Richard Fritts is a chartered financial consultant whose primary focus is "on providing independent retirement planning, investment, management, and estate preservation to conservative high net worth investors."

18.    Each of the Individual Defendants holds himself out to be an employee of Financial.

19.    Each of the Individual Defendants is listed on Financial's website as part of their "Team" and each has their picture featured beneath a caption reading "[o]nly Thomas Wormsley, Eric Fritts, and Michael Fritts offer investment products and services. We have a strong team of financial professionals . . .."

20.    The Investment Adviser Representative Public Disclosure Report for M. Fritts ("M. Fritts Report") specifically states that his current employer is Brookstone, and

4

lists Brookstone's address as 112 Glenleigh Court, Suite 4, Knoxville, Tennessee 37934 (the same address where Financial lists its principal office address). A copy of the M. Fritts Report is attached as **Exhibit A** and incorporated by reference.

21.    The Investment Adviser Representative Public Disclosure Report for E. Fritts ("E. Fritts Report") specifically states that his current employer is Brookstone and lists Brookstone's address as 112 Glenleigh Court, Suite 3, Knoxville, Tennessee 37934. A copy of the E. Fritts Report is attached as **Exhibit B** and incorporated by reference.

22.    The E. Fritts Report states that E. Fritts was employed by Fritts Financial from February 2012 to present, by Horter from January 2012 to August 2016, and by Fritts & Associates from August 2003 to February 2012.

23.    The BrokerCheck individual summary report for Wormsley ("Wormsley Report") specifically states that his current employer is SAI with an address at 112 Glenleigh Court, Suite 2, Knoxville, Tennessee 37934. A copy of the Wormsley Report is attached as **Exhibit C** and incorporated by reference.

24.    By virtue of a Warranty Deed of record in the Knox County Register of Deeds office at Book 2157, Page 294, R. Fritts is the owner of the property with a physical location at 112 Glenleigh Court, Knoxville, Tennessee 37934.

25.    The Plaintiff, Anne Wunschel, and her late husband, Henry J. Wunschel, first met with R. Fritts and began seeking investment advice and obtaining investment services through R. Fritts and his brokerage firm in or about 2011.

26.    On April 20, 2015, Mr. Henry J. Wunschel passed away.

27.    Soon after Mr. Wunschel's death, the Plaintiff met with R. Fritts to discuss her estate planning and investment needs in light of her husband's death. Present at this

5

first meeting were R. Fritts, M. Fritts, the Plaintiff's son, Mr. Steven Wunschel, and the Plaintiff. At this first meeting, R. Fritts generally discussed Ms. Wunschel's financial needs and the current state of her investments through his firm. R. Fritts promised to prepare an investment strategy for Ms. Wunschel to meet her financial needs.

28.     Ms. Wunschel is currently eighty-two (82) years old, retired, and lives completely off the income derived from her investments though R. Fritts and his brokerage firm in addition to a small amount of income received from Social Security and Military Survivor Benefits.

29.     Ms. Wunschel and her son, Steve Wunschel, met with R. Fritts and M. Fritts again in the summer of 2015 to discuss the investment strategy created by R. Fritts and his firm specifically for Ms. Wunschel.

30.     As part of his investment strategy for Ms. Wunschel, R. Fritts advised that she make an investment in a company generally referred to as The Woodbridge Group of Companies, LLC ("Woodbridge").

31.     R. Fritts and his brokerage firm specifically suggested that Ms. Wunschel invest the principal amount of Two Hundred Fifteen Thousand Dollars ($215,000.00) with an entity owned by Woodbridge and referred to as Woodbridge Mortgage Investment Fund 3A, LLC.

32.     R. Fritts and his firm specifically advised Ms. Wunschel that she would be loaning the principal amount of Two Hundred Fifteen Thousand Dollars ($215,000.00) to Woodbridge and in exchange she would receive monthly dividend payments in the amount of six percent (6%) of the principal amount, which equated to One Thousand Seventy-five Dollars ($1,075.00) after the deduction of fees, costs, or commission payments.

33.     Woodbridge is believed to be a luxury real estate development company which secures financing for construction of real property developments across the United States through "loans" made primarily by elderly, retired individuals.

34.     Woodbridge has claimed to have raised one billion dollars ($1,000,000,000.00) to fund its luxury real estate developments.

35.     Approximately Seven Hundred Fifty Million Dollars ($750,000,000.00) of the funds raised by Woodbridge was through loans made by approximately 9,000 individual "investors", one of which is the Plaintiff.

36.     R. Fritts specifically advised Ms. Wunschel that she would receive a signed Promissory Note from Woodbridge promising to pay the six percent (6%) monthly dividend payments on the principal amount and that the Promissory Note would be recorded as a Purchase Money Mortgage and act as a lien, with first priority, in the land records where the real estate development was located.

37.     R. Fritts generally advised Ms. Wunschel that the investment with Woodbridge was a conservative, safe investment in keeping with her expressed needs.

38.     Specifically, R. Fritts advised Ms. Wunschel that her loan to Woodbridge would be secured by real and personal property.

39.     R. Fritts also specifically advised Ms. Wunschel that he had recently made a trip to California, where Woodbridge had its principal office, and spoken with representatives of Woodbridge with regard to how the investment with Woodbridge would work.

40.     R. Fritts specifically advised Ms. Wunschel that all of the real property which would be acting as security for repayment of the Notes was valued at a minimum of

7

two times the amount of debt for which this property acted as security.

41.     R. Fritts advised that Woodbridge was the record owner of the real property which would act as security for the debt and that Woodbridge would make certain that a Deed of Trust or other proper security instrument was properly recorded with the appropriate Register of Deeds and that a UCC-1 Financing Statement was recorded with the proper Secretary of State for purposes of perfecting Ms. Wunschel's security interest in the collateral.

42.     R. Fritts also specifically advised Ms. Wunschel, during the summer 2015 meeting, that he had invested Three Hundred Fifty Thousand Dollars ($350,000.00) of his own money in Woodbridge in the same manner he was advising Ms. Wunschel to invest.

43.     Based on R. Fritts' assurances, counsel, and advice, Ms. Wunschel agreed to invest the principal amount of Two Hundred Fifteen Thousand Dollars ($215,000.00) with Woodbridge Mortgage Investment Fund 3A, LLC.

44.     Through R. Fritts and Financial, Ms. Wunschel was provided with a Promissory Note executed by a representative of Woodbridge Mortgage Investment Fund 3A, LLC promising to repay the principal amount of Two Hundred Fifteen Thousand Dollars ($215,000.00) one (1) year from the date the Promissory Note was executed.

45.     During the one (1) year term of the Note, no principal payments would be due by Woodbridge; rather, Woodbridge would make interest payments on the principal amount until the maturity date of the Note.

46.     Each time one of the Notes executed by Woodbridge in favor of Ms. Wunschel would begin to reach its maturity date, Ms. Wunschel would be provided with what was referred to as a Cancellation of Promissory Note and Loan Agreement by R.

8

Fritts or Financial. This document would purport to be an agreement by Ms. Wunschel that Woodbridge had repaid the principal amount of the prior note and was releasing Woodbridge in full from any obligations under the note.

47.   Simultaneous with this cancellation Ms. Wunschel would be provided with a new Promissory Note wherein she would agree to re-loan the principal amount of Two Hundred Fifteen Thousand Dollars ($215,000.00) to Woodbridge and the process would begin again.

48.   This same process of cancelling the prior Note and releasing Woodbridge, while simultaneously re-loaning the principal amount through a new Promissory Note and Loan Agreement would occur every year from 2015 until the final Note in 2017; the interest always remained six percent (6%) on each Note.

49.   On April 28, 2017, Ms. Wunschel as the Lender, and Woodbridge as the Borrower both executed a Cancellation of Promissory Note and Loan Agreement. A copy of the April 28, 2017 Cancellation of Promissory Note and Loan Agreement is attached as **Exhibit D** and incorporated by reference.

50.   The April 28, 2017 Cancellation specifically stated that: (1) the borrower had executed a Promissory Note on March 24, 2016, in the principal amount of Two Hundred Fifteen Thousand Dollars ($215,000.00) payable to the lender, (2) on March 24, 2016, Ms. Wunschel and Woodbridge entered into a certain loan agreement, (3) Woodbridge had full paid, performed, and satisfied its obligations under the Note and Loan Agreement, and (4) the Borrow had no further obligations to Ms. Wunschel under the Note or Loan Agreement.

51.   On May 1, 2017, Ms. Wunschel executed a Release of Assignment and

Collateral Assignment specifically stating that: (1) the March 24, 2016 Promissory Note in the principal amount of Two Hundred Fifteen Thousand Dollars ($215,000.00) was released and discharged, (2) that a certain assignment of Promissory Note and Mortgage effective September 6, 2016 was forever released and discharged, and (3) that a certain Collateral Assignment of Note, Mortgage, and Other Loan Documents effective September 6, 2016 were forever released and discharged. The Release of Assignment and Collateral Assignment agreement executed on May 1, 2017 is attached as **Exhibit E**.

52.    Ms. Wunschel also executed a Release of Collateral Assignment of Note, Mortgage, and Other Loan Documents on June 20, 2017, which is attached as **Exhibit F**.

53.    On April 28, 2017 (the same date that the Cancellation of Promissory Note and Loan Agreement was executed releasing the May 24, 2016 Note), Woodbridge Mortgage Investment Fund 3A, LLC, executed a new Promissory Note in favor of Ms. Wunschel in the principal amount of Two Hundred Fifteen Dollars ($215,000.00).   The April 28, 2017 Note is attached as **Exhibit G**.

54.    The April 28, 2017 Promissory Note from Woodbridge to Ms. Wunschel states that monthly payments of the six percent (6%) interest shall commence on June 1, 2017 and that the Note will mature on September 1, 2018. The April 28, 2017 Promissory Note also specifically states that it shall be secured "inter alia by the Collateral Assignment Documents upon execution thereof."

55.    Also on April 28, 2017, Ms. Wunschel and Woodbridge Mortgage Investment Fund 3A, LLC entered into a certain Loan Agreement under which Ms. Wunschel agreed to loan the principal amount of Two Hundred Fifteen Thousand Dollars ($215,000.00) to Woodbridge and in exchange Woodbridge would pay the six percent

(6%) interest and execute the April 28, 2017 Promissory Note. A copy of the April 28, 2017 Loan Agreement is attached as **Exhibit H**.

56.     Under the security interests section of the April 28, 2017 Loan Agreement, Woodbridge granted to Ms. Wunschel a security interest in all of Woodbridge's present and future right, title and interest in and to any and of the following (the "Collateral"): (1) a certain loan agreement in the principal amount of Sixty-three Million Dollars ($63,000,000.00) extended or to be extended by Sturmer Pippin Investments, LLC, (2) the promissory note evidencing the Pledged Loan, (3) the mortgage or deed of trust securing the Pledged Loan and an interest in the Premises, (4) insurance policies or other documentation as may be executed by Woodbrige, and (5) upon consummation of the Pledged Loan, Woodbridge agreed to execute and deliver to Ms. Wunschel collateral assignment documents.

57.     Under Section 3 of the April 28, 2017 Loan Agreement, Woodbridge represented to Ms. Wunschel that it had or would have good and marketable title to the Pledged Loan and Collateral free of any adverse liens, security interest or encumbrances of record as of the date of the Pledged Loan.

58.     In addition, Ms. Wunschel, under the same section of the Loan Agreement, represented and warranted to Woodbridge that: (i) the loan documents and Pledged Loan they evidence constitute **a commercial loan transaction and are not for investment purposes**; and (ii) Ms. Wunschel had reviewed the loan documents and associated other information on the borrower of the Pledged Loan, and has the opportunity to review said documents and information with its own legal counsel, and that she had sufficient access to all of said documents and information to allow her to make her own credit decision with

respect to the Pledged Loan and had in fact made her own credit decision in determining to load the principal amount to Woodbridge (the term "Woodbridge Investments" is hereinafter used to refer to the series of transactions described in paragraphs forty-three (43) through fifty-seven (57).

59.　All of the foregoing instruments were provided to Ms. Wunschel by R. Fritts or Financial or both and were signed by Ms. Wunschel at R. Fritts' and Financial's business offices or were mailed to Ms. Wunschel for her to sign and return to the offices of R. Fritts and Financial.

60.　Ms. Wunschel executed all of the foregoing instruments and contracts on the advice and counsel of R. Fritts and Financial.

61.　Ms. Wunschel agreed to make the loan and execute the foregoing instruments based on the assurances and financial advice provided to her by R. Fritts and Financial.

62.　However, as noted, Financial was first formed on May 24, 2016, and became effective on July 1, 2016; therefore, some of the acts or omissions which give rise to this Complaint occurred before the existence of Financial and some occurred after.

63.　In July of 2017, Ms. Wunschel did not receive her dividend check from Woodbridge as scheduled. When she called to determine why the check had not been received, she was told it had been lost in the mail. Ms. Wunschel then asked that the dividends payments going forward be direct deposited into an account owned by Ms. Wunschel and she did receive the July 2017 dividend payment.

64.　Ms. Wunschel received her last dividend payment check from Woodbridge in November of 2017. She has not received any payments as a result of her Two Hundred

Fifteen Thousand Dollar ($215,000.00) investment with Woodbridge since November of 2017.

**B.    The SEC Investigation and Bankruptcy**

65.    Woodbridge has been under investigation by the Securities and Exchange Commission (the "SEC") since at least January of 2017.

66.    On July 17, 2017, the SEC filed an Application for an Order Enforcing an Administrative Subpoena against Woodbridge in the United States District Court for the Southern District of Florida.

67.    In its application, the SEC specifically stated that it had issued an administrative subpoena to Woodbridge "on January 31, 2017, to produce documents in connection with an ongoing investigation. The Commission's investigation seeks information regarding Woodbridge's receipt of over $1 billion of investor funds and whether the company is operating a fraud on its investors."

68.    The SEC Application goes on to state that the SEC has been investigating potential violations of the Securities Act of 1933 and the Securities Exchange Act of 1934 related to Woodbridge and that Woodbridge or its agents, partners or others on its behalf "may have been . . . making false statements of material fact or failing to disclose material facts, to investors and others, concerning, among other things, the use of investor funds, the safety of the investments, the profitability of the investments, the sales fees, or other costs associated with the purchase of the investments."

69.    On or about December 4, 2017, Woodbridge Group of Companies, including Woodbridge Investment Fund 3A, LLC, along with over two hundred (200) related companies, filed for bankruptcy protection in the United States Bankruptcy Court

for the District of Delaware under Chapter 11 of the Bankruptcy Code.

70.     As part of the bankruptcy filings, it has been revealed that Woodbridge and its approximately 250 affiliated or directly owned subsidiaries had been under investigation by the Securities and Exchange Commission (the "SEC") for over a year.

71.     The SEC has made filings in the bankruptcy case indicating that Woodbridge Group of Companies is a Ponzi scheme created by the Woodbridge founder, Mr. Robert Schapiro, and has been used by Mr. Schapiro to defraud thousands of individual investors.

72.     There are approximately nine thousand (9,000), primarily elderly, investors who have provided approximately Seven Hundred Fifty Million Dollars ($750,000,000.00) to Woodbridge through individual loans similar in nature to the loan made by Ms. Wunschel.

C.     **Relationship Between Individual and Entity Defendants**

73.     Upon information and belief, E. Fritts, M. Fritts, and Wormsley are employees of Financial.

74.     E. Fritts, M. Fritts and Wormsley are actual or apparent agents of Financial.

75.     Upon information and belief, E. Fritts, M. Fritts, and Wormsley specifically strategized and consulted with R. Fritts in creating an investment strategy for Ms. Wunschel, which included proposing and obtaining investments on her behalf with Woodbridge.

76.     M. Fritts was specifically present at some in person meetings with the Plaintiff to discuss her investments through Financial or R. Fritts and is believed to have contributed to advice and counsel provided to Ms. Wunschel that includes advice to invest

14

in Woodbridge.

77. M. Fritts, E. Fritts, and Wormsley work out of the same office as Mr. Richard Fritts and specifically work with Mr. Richard Fritts in strategizing and advising customers with regard to investment strategy and the purchase of investments.

78. Upon information and belief, M. Fritts, E. Fritts, and Wormsley specifically consulted with and counseled Mr. Richard Fritts in creating and implementing an investment strategy for Ms. Wunschel, which included investments with Woodbridge.

79. Neither Mr. Richard Fritts, nor M. Fritts, nor E. Fritts are believed to be licensed to sell securities investments to clients or customers in Tennessee or any other state.

80. M. Fritts and E. Fritts are both currently employees of Brookstone, and on information and belief, have been since August of 2016.

81. During a period of time covered by the underlying facts, E. Fritts was an employee of Horter.

82. Upon information and belief, Mr. Thomas Keith Wormsley, regularly consults with and advises Mr. Richard Fritts with regard to Financial's clients and their investment strategies and purchases of investments.

83. Upon information and belief, Mr. Thomas Keith Wormsley specifically took part in creating, obtaining and implementing an investment strategy for Ms. Wunschel, which included investments with Woodbridge.

84. Mr. Wormsley is the only potential employee, colleague, or affiliate of Mr. Richard Fritts or Financial who is licensed to sell securities by the Securities and Exchange Commission through his direct employment with Securities America, Inc.

85. Mr. Wormsley has taken and passed his series 65 and series 63 examination specifically allowing him to advise customers with regard to securities and to sell securities investments to customers.

86. Wormsley is currently an employee of SAI and, on information and belief, has been since 2014.

87. Fritts Financial, LLC has held itself out to be a broker dealer with regard to the sale and purchase of securities (stocks, bonds, mutual funds, and certain other investment products) to customers.

88. Fritts Financial, LLC has specifically held itself out to specialize in and target conservative, elderly investors with high net worths.

89. The Individual Defendants each took part in creating, advertising, and communicating an investment strategy for Ms. Wunschel and each took part in obtaining and facilitating the investments made by Ms. Wunschel with Woodbridge.

90. Each of the Entity Defendants employed one or more of the Individual Defendants at some point during which the Individual Defendants were facilitating the above described investment on behalf of the Plaintiff with Woodbridge and each received some form of remuneration or other benefit as a result of counseling, procuring and facilitating the Woodbridge Investments.

91. Each of the individual Defendants owed a duty to the Plaintiff which included, without limitation, a duty to investigate any recommended investments and perform due diligence on the risk involved with such investments and to consider the overall goals of the Plaintiff in making such recommendations.

92. On information and belief, R. Fritts operates and controls Financial.

## IV. CAUSES OF ACTION

## COUNT 1. NEGLIGENCE

93.     The plaintiff reasserts paragraphs one (1) through ninety-two (92) as if set forth verbatim.

94.     The Individual Defendants each owed a duty to the Plaintiff to act in her best interests and to conduct a due diligence investigation of the Woodbridge Investments prior to advising, advertising, counseling, facilitating or obtaining the investment on her behalf.

95.     The Individual Defendants each breached their duty to the Plaintiff.

96.     As a direct and proximate result of the Individual Defendants breach of the above described duty, the Plaintiff suffered damages.

## COUNT 2. NEGLIGENCE PER SE

97.     The Plaintiff reasserts paragraphs one (1) through ninety-six (96) as if set forth verbatim.

98.     The Individual Defendants each owed a duty as described above to the Plaintiff.

99.     The Individual Defendants breached their duty to the Plaintiff through various violations of the Securities and Exchange Act of 1934 and the Securities Act of 1933, as well as various state laws, as set forth more fully below and through their unauthorized practice of law in the state of Tennessee.

100.    The Plaintiff has suffered damages as a direct and proximate result of the Defendants' breach of the above described duty owed to her by the Individual Defendants.

## COUNT 2. BREACH OF CONTRACT

101.    The Plaintiff reasserts paragraphs one (1) through one hundred (100) as if set forth verbatim.

102.    A valid and enforceable contract exists between the Plaintiff and Defendant, R. Fritts, in that R. Fritts promised to facilitate and obtain an investment on the Plaintiff's behalf with Woodbridge.

103.    In exchange for his services in advising, facilitating, and obtaining the Woodbridge investment on the Plaintiff's behalf, R. Fritts was to receive certain commissions or fees.

104.    As part of this contract, R. Fritts promised the Plaintiff that certain real and personal property would stand as collateral for her investment with Woodbridge.

105.    R. Fritts promised the Plaintiff that her investment would be secured by a first priority lien against certain real and personal property owned by Woodbridge.

106.    R. Fritts promised the Plaintiff that the documents governing her investment with Woodbridge would be recorded with the proper agencies to perfect her security interest.

107.    R. Fritts breached his contract with the Plaintiff.

108.    The Plaintiff suffered damages as a result of R. Fritts' breach of his contract with Plaintiff.

## COUNT 3. BREACH OF FIDUCIARY DUTY

109.    The Plaintiff reasserts and realleges paragraphs one (1) through one hundred eight (108) as if set forth verbatim here.

110.    Each of the Defendants acted at various times as fiduciary for the Plaintiff.

18

111.     A fiduciary relationship existed between the Plaintiff and each of the Defendants at various times during the period covered by the underlying facts through its advertising, solicitation, advice, and counsel to the Plaintiff regarding certain investments.

112.     Each of the Defendants breached its fiduciary duty to the Plaintiff, specifically related to the Woodbridge Investments, through a failure to perform basic due diligence on recommended investments, failing to keep the Plaintiff's best interest in mind in counseling, facilitating, or obtaining investments on her behalf, and recommending, counseling, advising, facilitating, or obtaining risky investments on her behalf, not in keeping with her expressed goals.

113.     The Plaintiff has suffered damages as a direct and proximate result of each of the Defendants' breach of their fiduciary duty to her.

114.     Each of the Defendants has benefited in the form of fees, expenses, commissions or costs paid to the Defendants as a result of the Woodbridge Investments obtained on the Plaintiff's behalf by the Defendants.

## COUNT 4. NEGLIGENT MISREPRESENTATION

115.     The Plaintiff reasserts and realleges paragraphs one (1) through one hundred fourteen (114) as if set forth verbatim here.

116.     The Defendants R. Fritts and Financial supplied information to the Plaintiff which was false with regard to the investment with Woodbridge.

117.     Defendants R. Fritts and Financial did not exercise reasonable care in obtaining or communicating information with regard to Woodbridge to the Plaintiff.

118.     The Plaintiff reasonably and justifiably relied on the information provided by R. Fritts and Financial with regard to the investment with Woodbridge.

119. The Plaintiff has suffered damages as a result of her reliance upon the false information provided by Defendants R. Fritts and Financial.

120. The Plaintiff suffered damages as a proximate and direct result of the Defendants' negligent misrepresentations.

121. Each of the Defendants was aware at various times during the period covered by the underlying facts that Woodbridge was under investigation by the Securities and Exchange Commission.

122. Each of the Defendants had a duty to, but did not, disclose to the Plaintiff the fact that Woodbridge was under investigation by the Securities and Exchange Commission.

123. Each of the Defendants knew that Woodbridge had not in fact recorded the Plaintiff's security interest in certain real and personal property which acted as collateral for her investment with Woodbridge.

124. The Defendants did not disclose to the Plaintiff that Woodbridge had not recorded the Plaintiff's security interest in certain personal or real property.

125. The Defendants had a duty to disclose this information, along with other information not specifically listed in this Count, to the Plaintiff.

126. The information known by the Defendants but not disclosed to the Plaintiff was material in that it would have substantially impacted her decision with regard to any investment with Woodbridge.

127. The Plaintiff has suffered damages as a result of her reliance on the Defendants' non-disclosure.

128. The Plaintiff was not aware of the material facts which were not disclosed

to her with regard to the Woodbridge Investments.

## COUNT 5. VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

129.   The Plaintiff reasserts and realleges paragraphs one (1) through one hundred twenty-eight (128) as if set forth verbatim here.

130.   The Plaintiff is a consumer as defined under the Tennessee Consumer Protection Act (the "TCPA").

131.   The sale of investments or securities are "goods" under the TCPA, and investment counseling and advise is likewise a "service" under the TCPA.

132.   The Defendants advertised, counseled, and sold investments or securities to the Plaintiff, which were consumer transactions under the TCPA.

133.   The Defendants' actions in advising, counseling, advertising, facilitating, and obtaining securities or investments on behalf of the Plaintiff, specifically related to the Woodbridge Investments, specifically involved unfair and deceptive acts or practices on the Defendants' part and represent multiple violations of the TCPA.

134.   The Plaintiff has suffered monetary damages as a direct and proximate result of the Defendants' violations of the TCPA and their unfair and deceptive acts or practices in connection with the Woodbridge Investments.

## COUNT 6. UNJUST ENRICHMENT

135.   The Plaintiff reasserts and realleges paragraphs one (1) through one hundred thirty-four (134) as if set forth verbatim here.

136.   The Defendants have each received a benefit as a result of the Plaintiff's investment with Woodbridge in the form of fees, commissions, or other expenses related to these transactions.

21

137.   Each of the Defendants has appreciated these benefits in the form of actual money or business derived from the Plaintiff.

138.   It would be inequitable for the Defendants to keep such benefit as it was derived under false pretenses and without an equivalent value or any value being conferred upon the Plaintiff.

## COUNT 7. CIVIL CONVERSION

139.   The Plaintiff reasserts and realleges Paragraphs One (1) through One Hundred Thirty-eight (138) as if set forth verbatim here.

140.   The Defendants' wrongful retention of commissions, expenses, or other costs disbursed to the Defendants and kept by the Defendants, constitutes a civil conversion of funds.

141.   As a direct and proximate result of the Defendants' conduct, the Plaintiff has suffered monetary damages.

142.   The Plaintiff is entitled to recover from the Defendant the amount of wrongfully received and retained commissions or other expenses related to the Woodbridge Investments.

## COUNT 8. VIOLATION OF THE SECURITIES ACT OF 1933

143.   The Plaintiff reasserts and realleges paragraphs one (1) through one hundred forty-two (142) as if set forth verbatim here.

144.   The Woodbridge Investments as described above are "securities" under the Federal Securities Act of 1933 because:

    a.   The investor invested money with the expectation of profit;

    b.   There is a pooling of investors' monetary resources of other investors in

order to purchase or finance the entire project or loan;

c.     There is a sharing of profits or a sharing of losses among the investors; and

d.     The realization of a profit or loss results solely from the efforts of others, which is to say, the investor/purchaser exercises absolutely no control of the management of the investment.

145.     The Woodbridge Investments are more specifically a security in the form of an "investment contract." An investment contract is a contract, transaction, or scheme whereby a person invests money in a common enterprise and is led reasonably to expect to share in the profits generated solely from the efforts of the promoter or from a third party (in the case of Woodbridge, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interest in the physical assets employed in the enterprise).

146.     The test for an investment contract contains the following three prongs:

a.     The investment of money with the expectation of profit;

b.     In a common enterprise; and

c.     Solely from the efforts of others.

147.     The Woodbridge Investments satisfy the test for investment contracts. Therefore, the Woodbridge Investments are securities and are governed by the Federal Securities Act of 1933.

148.     On information and belief, the Woodbridge Investments are not registered, which is a violation of the Federal Securities Act of 1933.

149.     As a result of the Woodbridge Investments not being registered, and pursuant to the Federal Securities Act of 1933, and based on the facts and circumstances

alleged in this Complaint, Plaintiff has the right to such recovery as permitted under and consistent with the Federal Securities Act of 1933, including the consideration paid to Woodbridge.

150. The Defendants failed to make the appropriate disclosures and to deliver the appropriate information concerning the Woodbridge investments to the Plaintiff, which would have enabled the Plaintiff to make an informed judgement as to whether to invest in Woodbridge.

151. The Defendants directly participated in and aided Woodbridge in advising the Plaintiff to invest in Woodbridge through material misrepresentations and omissions as to the safety or risks of such investment.

152. The Defendants actively sought to entice the Plaintiff, who is a naïve investor, to place her money in the Woodbridge Companies, and made such omissions and misrepresentations as to confuse and confound the Plaintiff and cause her to invest monies with Woodbridge which she otherwise would not have done.

153. The Defendants specifically misrepresented and failed to disclose certain elements or other intricacies associated with the Woodbridge investments and failed to adequately explain to the Plaintiff the risks, which without limitation, include:

      a.    Risks associated with the negligence and/or criminal fraudulent conduct by the parties to whom the funds are given primarily agents, subsidiaries, or affiliates of Woodbridge; and

      b.    Risks of illiquidity in obtaining any return on the Woodbridge investments; and

      c.    Risks of bankruptcy or insolvency on the part of the borrower or its

affiliates or subsidiaries; and

       d.    Risks associated with the lack of marketing integrity and regulation of the Woodbridge investments; and

       e.    Risks that the proposed security interest given to the Plaintiff would not be perfected or contested by Woodbridge or its subsidiaries or affiliates; and

       f.    Risks associated with inadequate disclosure of the Woodbridge Investments and offering materials.

154.    Further, the Defendants misrepresentations to the Plaintiff were made with actual malice or reckless disregard for the truth and were as follows:

       a.    Material misrepresentation and omissions as to the safety or risk involved in the Woodbridge Investments; and

       b.    Material misrepresentations and omissions made to the Plaintiff with actual knowledge of their falsity and specifically including equity in the real and personal property which would serve as collateral for the loans and recording of the security interest with the proper agencies.

155.    The Plaintiff relied on the Defendants' misrepresentations or omissions to her detriment.

156.    An investor harmed by prospectus fraud, under the Federal Securities Act of 1933 is permitted to recover the consideration paid for such security, together with pre-judgment interest and attorney's fees.

157.    Further, because the Defendants' conduct was willful, fraudulent, malicious, and oppressive, the Plaintiff is also entitled to punitive damages.

**COUNT 9. VIOLATION OF THE TENNESSEE SECURITIES ACT OF 1980**

158. The Plaintiff reasserts and realleges paragraphs one (1) through one hundred fifty-seven (157) as if set forth verbatim here.

159. The Woodbridge Investments described above are "securities" as defined by the Tennessee Securities Act of 1980 because they are investment contracts.

160. On information and belief, the Woodbridge investments are not registered, which is a violation of the Tennessee Securities Act of 1980.

161. As a result of the Woodbridge investments not being registered, and pursuant to the Tennessee Securities Act of 1980, and based on the facts and circumstances alleged in this Complaint, Plaintiff has the right to such recovery as permitted under and consistent with the Tennessee Securities Act of 1980, including the consideration paid to Woodbridge.

162. Under the Tennessee Securities Act of 1980, specifically under Section 48-1-121 of the Act:

(a) It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly, to:

(1) Employ any device, scheme, or artifice to defraud;

(2) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

(b) It is unlawful for any person who receives any consideration from another person primarily for advising the other person as to the value of securities

or their purchase or sale, whether through the issuance of analyses or reports or otherwise, in this state, to:

(1) Employ any device, scheme, or artifice to defraud the other person;

(2) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon the other person; or

(3) Take or have custody of any securities or funds of any client except as the commissioner may by rule permit or unless the person is licensed as a broker-dealer under this part.

163. Sellers participating in selling securities in violation of the Tennessee Securities Act of 1980, shall be liable to the person purchasing the security from the seller to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, less the amount of any income received on the security, upon the tender of the security, or, if the purchaser no longer owns the security, the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and interest at the legal rate from the date of disposition.

164. Any person who willfully engages in any act or conduct which violates the Act shall be liable to any other person who purchases or sells any security at a price which was affected by the act or conduct for the damages sustained as a result of such act or conduct.

165. In any such suit under the Act, the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant.

166. Every person who directly or indirectly controls a person liable under the

Act, every partner, principal executive officer, or director of such person, every person occupying a similar status or performing similar functions, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person.

167.    Accordingly, all named Defendants are jointly and severally liable for the violations of the Tennessee Securities Act of 1980.

168.    The Plaintiff is entitled to such recovery as permitted by the Tennessee Securities Act of 1980 in addition to any other rights or remedies that may exist at law or in equity.

## COUNT 10. VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

169.    The Plaintiff reasserts and realleges paragraphs one (1) through one hundred sixty-eight (168) as if set forth verbatim here.

170.    The Defendants' acts and misrepresentation and omissions in connection with the sale of the Woodbridge Investments were calculated to deceive the Plaintiff for guaranteed high rates of return on the investor's investment with the absence of risk.

171.    The Defendants failed to perform any meaningful due diligence or ascertain that the Plaintiff's investment dollars would be used to invest in the real estate development which acted as collateral and security for repayment of the loan. The Defendants' conduct in securing the Woodbridge Investments on behalf of the Plaintiff illustrates a callous and reckless disregard for the safety of the Plaintiff's investment.

172.    The Defendants' sole concern was that they would receive commissions irrespective of any potential harm to the Plaintiff whose investment dollars they solicited.

173. The Defendants failed to ascertain whether the Woodbridge Investments were suitable for the Plaintiff and wrongly assumed that the Plaintiff could absorb a total loss of her investment with Woodbridge.

174. As noted, Woodbridge is now in Chapter 11 bankruptcy and has asserted the position that the Plaintiff is an unsecured creditor because none of her so-called "security interests" were properly recorded, meaning she will only be paid after secured creditors have been paid and may receive little to no repayment.

175. The Defendants have taken part in an elaborate Ponzi scheme calculated to bilk multiple investors of funds, primarily conservative but potentially affluent investors.

176. The Defendants have advertised and solicited investments in Woodbridge from their clients and particularly the Plaintiff and have made misrepresentations calculated to hoodwink and seduce the Plaintiff, an unsophisticated investor, into investing with Woodbridge.

177. The Plaintiff relied on the Defendants' misrepresentations and omissions to her detriment and has suffered a substantial loss of money as a result.

178. The Plaintiff is entitled to damages, pre-judgment interest, and punitive damages under the Securities and Exchange Act of 1934.

## COUNT 10. VIOLATION OF THE INVESTMENT ADVISORS ACT OF 1940

179. The Plaintiff reasserts and realleges paragraphs one (1) through one hundred seventy-eight (178) as if set forth verbatim here.

180. The Individual Defendants were investment advisors within the meaning of the Investment Advisors Act of 1940 because they solicited investors to purchase interests in Woodbridge, which were securities within the meaning of the Federal Securities Act of

1933 and the Federal Securities Exchange Act of 1934, and the Individual Defendants engaged in the business of advising the Plaintiff both directly and through literature as to the value of securities and the advisability of investing in Woodbridge.

181. The Individual Defendants did in fact negotiate and facilitate the Plaintiff investing in Woodbridge and received commissions and other fees associated with this investment from the Plaintiff.

182. The Defendant R. Fritts never filed his application for registration with the Securities Exchange Commission to inform the Commission of the nature of R. Fritts' business as an investment advisor in the manner in which Defendant R. Fritts is compensated as an investment advisor and such other matters that the Commission requires.

183. Defendant R. Fritts failed to keep records of his investment business as required by the Securities and Exchange Commission so that the Commission might examine R. Fritts' activities as an investment advisor and as deemed necessary by the Commission and for the public interest and protection of investors.

184. Defendant R. Fritts failed to establish or maintain or enforce written policies and procedures designed to prevent misuse of the rules and regulations promulgated by the SEC.

185. The Defendant R. Fritts effectuated a fraud and deceit upon the Plaintiff by engaging in transactions which resulted in the Plaintiff making the extremely risky investment with Woodbridge.

186. Defendant R. Fritts' activities and practices were fraudulent, deceptive, and manipulative because he sold interests in unregistered securities which were fraudulent in

the procurement and therefore risky investment instruments.

187.    The contracts surrounding the investment with Woodbridge and utilized by the Defendants are in the nature of devices, schemes, or artifices designed to provide Woodbridge and the Defendants with money and to provide the Defendants with the impetus to further exploit naïve and elderly investors and to cause them to invest their money in extremely risky investments to the benefit of the Defendants.

188.    As a direct and proximate result of the Defendants' fraudulent, deceptive, or manipulative business practices, the Plaintiff has suffered damages.

## COUNT 11: RESPONDEAT SUPERIOR CLAIMS AGAINST ENTITY DEFENDANTS

189.    Plaintiff reasserts and realleges paragraphs one (1) through one hundred eighty-eight (188) as if set forth verbatim.

190.    E. Fritts and M. Fritts have held themselves out to be employees or agents of Brookstone and Financial.

191.    The Plaintiff understood R. Fritts, M. Fritts and E. Fritts to each be employees, representatives, or agents of Financial and Brookstone.

192.    Wormsley has held himself out to be an employee or agent of both SAI and Financial.

193.    The Plaintiff understood Wormsley to be an agent, representative, or employee of SAI and Financial.

194.    All of the Entity defendants are liable for the acts and omissions of their employees or agents related to the advertisement, counsel, advice, facilitation and sell of the Woodbridge Investments to the Plaintiff.

195.    All of the acts or omissions of the Individual Defendants are imputed to the

31

respective Entity Defendants under the theory of Respondeat Superior.

## COUNT 12: PIERCING THE CORPORATE VEIL AS TO R. FRITTS

196.     Plaintiff reasserts and realleges paragraphs one (1) through one hundred ninety-five (195) as if set forth verbatim.

197.     On information and belief, R. Fritts is the sole member and owner of Financial.

198.     On information and belief, R. Fritts exercises complete dominion and control over Financial.

199.     On information and belief, R. Fritts operates and conducts business without regard to the separate legal status of Financial.

200.     On information and belief, at R. Fritts' direction, Financial does not maintain corporate formalities.

201.     On information and belief, Financial is grossly under-capitalized and has limited assets.

202.     On information and belief, the assets and business of R. Fritts and Financial are comingled.

## V. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Ms. Anne Wunschel, respectfully prays as follows:

1.   That process be issued and served upon the Defendants requiring them to appear  and answer this Complaint within the time allowed by law.

2.   That a jury of twelve (12) persons be impaneled to hear this matter.

3.   For pre-judgment interest.

4. For post-judgment interest.

5. For compensatory or any other proper form and measure of damages resulting from the causes of action and facts set forth above.

6. That she be awarded her reasonable attorney's fees and costs.

7. For punitive damages.

8. For treble damages.

9. That the Court pierce the corporate veil of Financial.

10. Any further and general relief which the Court deems appropriate.

Respectfully submitted this the 2ⁿᵈ day of February, 2018.

MOORE INGRAM JOHNSON & STEELE, LLP

Brent R. Laman, BPR No. 32214
Andrew Womack, BPR No. 35393
Attorneys for Plaintiff
Cedar Ridge Office Park
408 N. Cedar Bluff Road, Ste. 500
Knoxville, TN 37923
(865) 692-9039

Cost Bond

Moore Ingram Johnson & Steele, LLP acknowledge themselves as surety for costs for which execution may issue and as required by statute.

Brent R. Laman

KNOX COUNTY CIRCUIT COURT
CATHERINE F. SHANKS, CLERK
2018 FEB -2 PM 4:14
FILED



# Investment Adviser Representative Public Disclosure Report

# Michael Fritts

CRD# 6713005

Report #76433-23329, data current as of Tuesday, January 23, 2018.

| Section Title | Page(s) |
| --- | --- |
| Report Summary | 1 |
| Qualifications | 2 - 3 |
| Registration and Employment History | 4 |



FILED

2018 FEB -2 PM 4: 13

KNOX COUNTY CIRCUIT COURT
CATHERINE F. SHANKS, CLERK

EXHIBIT
A



## IAPD Information about Investment Adviser Representatives

IAPD offers information on all current-and many former-Investment Adviser Representatives. Investors are strongly encouraged to use IAPD to check the background of Investment Adviser Representatives before deciding to conduct, or continue to conduct, business with them.

- **What is included in a IAPD report?**
- IAPD reports for individual Investment Adviser Representatives include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards.

- It is important to note that the information contained in an IAPD report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the Investment Adviser Representative, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

- **Where did this information come from?**
- The information contained in IAPD comes from the Investment Adviser Registration Depository (IARD) and FINRA's Central Registration Depository, or CRD®, (see more on CRD below) and is a combination of:

  - information the states require Investment Adviser Representatives and firms to submit as part of the registration and licensing process, and
  - information that state regulators report regarding disciplinary actions or allegations against Investment Adviser Representatives.
  -

- **How current is this information?**
- Generally, Investment Adviser Representatives are required to update their professional and disciplinary information in IARD within 30 days.

- **Need help interpreting this report?**
- For help understanding how to read this report, please consult NASAA's IAPD Tips page http://www.nasaa.org/IAPD/IARReports.cfm.

- **What if I want to check the background of an Individual Broker or Brokerage firm?**
- To check the background of an Individual Broker or Brokerage firm, you can search for the firm or individual in IAPD. If your search is successful, click on the link provided to view the available licensing and registration information in FINRA's BrokerCheck website.

- **Are there other resources I can use to check the background of investment professionals?**
- It is recommended that you learn as much as possible about an individual Investment Adviser Representative or Investment Adviser firm before deciding to work with them. Your state securities regulator can help you research individuals and certain firms doing business in your state. The contact information for state securities regulators can be found on the website of the North American Securities Administrators Association http://www.nasaa.org.


# Investment Adviser Representative Report Summary

## Michael Fritts (CRD# 6713005)

The report summary provides an overview of the Investment Adviser Representative's professional background and conduct. The information contained in this report has been provided by the Investment Adviser Representative, investment adviser and/or securities firms, and/or securities regulators as part of the states' investment adviser registration and licensing process. The information contained in this report was last updated by the Investment Adviser Representative, a previous employing firm, or a securities regulator on **10/10/2016**.

## CURRENT EMPLOYERS

**BROOKSTONE CAPITAL MANAGEMENT LLC**
IARD# 141413
112 Glenleigh Ct
STE 4
Knoxville, TN  37934
Registered with this firm since: 10/10/2016

## QUALIFICATIONS

This Investment Adviser Representative is currently registered in **1** jurisdiction(s).

Is this Investment Adviser Representative currently suspended with any jurisdiction? **No**

**Note:** Not all jurisdictions require IAR registration or may have an exemption from registration.
Additional information including this individual's qualification examinations and professional designations is available in the Detailed Report.

## REGISTRATION HISTORY

This Investment Adviser Representative was previously registered with the following Investment Adviser firms:

No information reported.

For additional registration and employment history details as reported by the individual, refer to the Registration and Employment History section of the Detailed Report.

## DISCLOSURE INFORMATION

Disclosure events include certain criminal charges and convictions, formal investigations and disciplinary actions initiated by regulators, customer disputes and arbitrations, and financial disclosures such as bankruptcies and unpaid judgments or liens.

Are there events disclosed about this Investment Adviser Representative?     **No**

©2018 FINRA. All rights reserved. Report# 76433-23329 requested on Tuesday, January 23, 2018 about Michael  Fritts.

1



# Investment Adviser Representative Qualifications

## REGISTRATIONS

This section provides the states and U.S. territories in which the Investment Adviser Representative is currently registered and licensed, the category of each registration, and the date on which the registration became effective. This section also provides, for each firm with which the Investment Adviser Representative is currently employed, the address of each location where the Investment Adviser Representative works.

This individual is currently registered with **1** jurisdiction(s) through his or her employer(s).

## Employment 1 of 1

| | |
|---|---|
| Firm Name: | **BROOKSTONE CAPITAL MANAGEMENT LLC** |
| Main Address: | 1745 S. NAPERVILLE ROAD<br>SUITE 200<br>WHEATON, IL 60189 |
| Firm IARD#: | 141413 |

| U.S. State/ Territory | Status | Date |
|---|---|---|
| Tennessee | Approved | 10/10/2016 |

## Branch Office Locations

**BROOKSTONE CAPITAL MANAGEMENT LLC**
112 Glenleigh Ct
STE 4
Knoxville, TN 37934

©2018 FINRA. All rights reserved. Report# 76433-23329 requested on Tuesday, January 23, 2018 about Michael Fritts.

2



# Investment Adviser Representative Qualifications

## PASSED INDUSTRY EXAMS

This section includes all required state securities exams that the Investment Adviser Representative has passed. Under limited circumstances, an Investment Adviser Representative may attain registration after receiving an exam waiver based on a combination of exams the Investment Adviser Representative has passed and qualifying work experience. Likewise, a new exam requirement may be grandfathered based on an Investment Adviser Representative's specific qualifying work experience. Exam waivers and grandfathering are not included below.

This individual has passed the following exams:

| Exam | Category | Date |
|------|----------|------|
| Uniform Investment Adviser Law Examination (S65) | Series 65 | 09/12/2016 |

## PROFESSIONAL DESIGNATIONS

This section details that the Investment Adviser Representative has reported **0** professional designation(s).

No information reported.

©2018 FINRA. All rights reserved. Report# 76433-23329 requested on Tuesday, January 23, 2018 about Michael Fritts.

3





# Investment Adviser Representative Registration and Employment History

## PREVIOUSLY REGISTERED WITH THE FOLLOWING INVESTMENT ADVISER FIRMS

This section indicates that state registration records show this Investment Adviser Representative previously held registrations with the following firms:

No information reported.

## EMPLOYMENT HISTORY

Below is the Investment Adviser Representative's employment history for up to the last 10 years.

**Please note that the Investment Adviser Representative is required to provide this information only while registered and the information is not updated after the Investment Adviser Representative ceases to be registered, with a state regulator. Therefore, an employment end date of "Present" may not reflect the Investment Adviser Representative's current employment status.**

| Employment Dates | Employer Name | Employer Location |
|---|---|---|
| 08/2013 - Present | Fritts and Associates | Knoxville, TN |
| 01/2013 - 08/2013 | None | Louisville, KY |
| 07/2011 - 12/2012 | Columbia College | Chicago, IL |
| 12/2010 - 07/2011 | None | Knoxville, TN |
| 08/2007 - 12/2010 | TCBY | Knoxville, TN |
| 08/2008 - 05/2010 | Pellissippi Community College | Knoxville, TN |

## OTHER BUSINESS ACTIVITIES

This section includes information, if any, as provided by the Investment Adviser Representative regarding other business activities the Investment Adviser Representative is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent, or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious, or fraternal and is recognized as tax exempt.

Employee of Fritts Financial, LLC. which sells Life and health based products. Financial advisor that spends 30-40 hours per week advising on above recommendations.

©2018 FINRA. All rights reserved. Report# 76433-23329 requested on Tuesday, January 23, 2018 about Michael Fritts.



# End of Report

This page is intentionally left blank.

©2018 FINRA. All rights reserved. Report# 76433-23329 requested on Tuesday, January 23, 2018 about Michael Fritts.

5



# Investment Adviser Representative Public Disclosure Report

## RANDALL ERIC FRITTS

CRD# 6021047

Report #22920-65040, data current as of Friday, January 19, 2018.

| Section Title | Page(s) |
|---|---|
| Report Summary | 1 |
| Qualifications | 2 - 3 |
| Registration and Employment History | 4 |

2018 FEB -2 PM 4: 13

KNOX COUNTY CIRCUIT COURT
CATHERINE F. SHANKS, CLERK

FILED

EXHIBIT
B



**IAPD Information about Investment Adviser Representatives**

IAPD offers information on all current-and many former-Investment Adviser Representatives. Investors are strongly encouraged to use IAPD to check the background of Investment Adviser Representatives before deciding to conduct, or continue to conduct, business with them.

- **What is included in a IAPD report?**
- IAPD reports for individual Investment Adviser Representatives include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards.

- It is important to note that the information contained in an IAPD report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the Investment Adviser Representative, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

- **Where did this information come from?**
- The information contained in IAPD comes from the Investment Adviser Registration Depository (IARD) and FINRA's Central Registration Depository, or CRD®, (see more on CRD below) and is a combination of:

  - o information the states require Investment Adviser Representatives and firms to submit as part of the registration and licensing process, and
  - o information that state regulators report regarding disciplinary actions or allegations against Investment Adviser Representatives.
  - o
- **How current is this information?**
- Generally, Investment Adviser Representatives are required to update their professional and disciplinary information in IARD within 30 days.

- **Need help interpreting this report?**
- For help understanding how to read this report, please consult NASAA's IAPD Tips page http://www.nasaa.org/IAPD/IARReports.cfm.

- **What if I want to check the background of an Individual Broker or Brokerage firm?**
- To check the background of an Individual Broker or Brokerage firm, you can search for the firm or individual in IAPD. If your search is successful, click on the link provided to view the available licensing and registration information in FINRA's BrokerCheck website.

- **Are there other resources I can use to check the background of investment professionals?**
- It is recommended that you learn as much as possible about an individual Investment Adviser Representative or Investment Adviser firm before deciding to work with them. Your state securities regulator can help you research individuals and certain firms doing business in your state. The contact information for state securities regulators can be found on the website of the North American Securities Administrators Association http://www.nasaa.org.




# Investment Adviser Representative Report Summary

## RANDALL ERIC FRITTS (CRD# 6021047)

The report summary provides an overview of the Investment Adviser Representative's professional background and conduct. The information contained in this report has been provided by the Investment Adviser Representative, investment adviser and/or securities firms, and/or securities regulators as part of the states' investment adviser registration and licensing process. The information contained in this report was last updated by the Investment Adviser Representative, a previous employing firm, or a securities regulator on 09/28/2017.

## CURRENT EMPLOYERS

**BROOKSTONE CAPITAL MANAGEMENT LLC**
IARD# 141413
112 Glenleigh Court Ste 3
Knoxville, TN 37934
Registered with this firm since: 09/27/2016

## QUALIFICATIONS

This Investment Adviser Representative is currently registered in **1** jurisdiction(s).

Is this Investment Adviser Representative currently suspended with any jurisdiction? **No**

**Note:** Not all jurisdictions require IAR registration or may have an exemption from registration.
Additional information including this individual's qualification examinations and professional designations is available in the Detailed Report.

## REGISTRATION HISTORY

This Investment Adviser Representative was previously registered with the following Investment Adviser firms:

| FIRM (IARD#) - LOCATION | REGISTRATION DATES |
|---|---|
| HORTER INVESTMENT MANAGEMENT, LLC (IARD# 119880) - KNOXVILLE, TN | 02/01/2012 - 09/28/2016 |

For additional registration and employment history details as reported by the individual, refer to the Registration and Employment History section of the Detailed Report.

## DISCLOSURE INFORMATION

Disclosure events include certain criminal charges and convictions, formal investigations and disciplinary actions initiated by regulators, customer disputes and arbitrations, and financial disclosures such as bankruptcies and unpaid judgments or liens.

Are there events disclosed about this Investment Adviser Representative? **No**

©2018 FINRA. All rights reserved. Report # ... for ... requested on Friday, January ... 2018 ... ADAIR ...



www.adviserinfo.sec.gov



## Investment Adviser Representative Qualifications

## REGISTRATIONS

This section provides the states and U.S. territories in which the Investment Adviser Representative is currently registered and licensed, the category of each registration, and the date on which the registration became effective. This section also provides, for each firm with which the Investment Adviser Representative is currently employed, the address of each location where the Investment Adviser Representative works.

This individual is currently registered with 1 jurisdiction(s) through his or her employer(s).

## Employment 1 of 1

Firm Name: **BROOKSTONE CAPITAL MANAGEMENT LLC**

Main Address: 1745 S. NAPERVILLE ROAD
SUITE 200
WHEATON, IL 60189

Firm IARD#: 141413

| U.S. State/ Territory | Status | Date |
|---|---|---|
| Tennessee | Approved | 09/27/2016 |

## Branch Office Locations

**BROOKSTONE CAPITAL MANAGEMENT LLC**
112 Glenleigh Court Ste 3
Knoxville, TN 37934





# Investment Adviser Representative Qualifications

## PASSED INDUSTRY EXAMS

This section includes all required state securities exams that the Investment Adviser Representative has passed. Under limited circumstances, an Investment Adviser Representative may attain registration after receiving an exam waiver based on a combination of exams the Investment Adviser Representative has passed and qualifying work experience. Likewise, a new exam requirement may be grandfathered based on an Investment Adviser Representative's specific qualifying work experience. Exam waivers and grandfathering are not included below.

This individual has passed the following exams:

| Exam | Category | Date |
|---|---|---|
| Uniform Investment Adviser Law Examination (S65) | Series 65 | 11/14/2011 |

## PROFESSIONAL DESIGNATIONS

This section details that the Investment Adviser Representative has reported **0** professional designation(s).

No information reported.

©2018 FINRA. All rights reserved. Report# 22920-95040 requested on Friday, January 19, 2018 through PANDAIb ERIC FORTSA



# Investment Adviser Representative Registration and Employment History

## PREVIOUSLY REGISTERED WITH THE FOLLOWING INVESTMENT ADVISER FIRMS

This section indicates that state registration records show this Investment Adviser Representative previously held registrations with the following firms:

| Registration Dates | Firm Name | IARD# | Branch Location |
|---|---|---|---|
| 02/01/2012 - 09/28/2016 | HORTER INVESTMENT MANAGEMENT, LLC | 119880 | KNOXVILLE, TN |

## EMPLOYMENT HISTORY

Below is the Investment Adviser Representative's employment history for up to the last 10 years.

Please note that the Investment Adviser Representative is required to provide this information only while registered and the information is not updated after the Investment Adviser Representative ceases to be registered, with a state regulator. Therefore, an employment end date of "Present" may not reflect the Investment Adviser Representative's current employment status.

| Employment Dates | Employer Name | Employer Location |
|---|---|---|
| 08/2016 - Present | Brookstone Capital Management | Wheaton, IL |
| 02/2012 - Present | FRITTS FINANCIAL | KNOXVILLE, TN |
| 01/2012 - 08/2016 | HORTER INVESTMENT MANAGEMENT, LLC | KNOXVILLE, TN |
| 08/2003 - 02/2012 | FRITTS & ASSOCIATES | KNOXVILLE, TN |

## OTHER BUSINESS ACTIVITIES

This section includes information, if any, as provided by the Investment Adviser Representative regarding other business activities the Investment Adviser Representative is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent, or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious, or fraternal and is recognized as tax exempt.

FRITTS FINANCIAL, KNOXVILLE, TN, INVESTMENT RELATED, INSURANCE/SALES REP SINCE 08/2003, 80 HOURS/MONTH DEVOTED, DUTIES: SELL FIXED & INDEXED ANNUITIES AND LIFE INSURANCE.

Q3 Advisors (Active 401K), 2040 N Loop 336 W Suite 125, Conroe, TX 77304, Active 401K Software Promoter, Solicit 401K Management software to prospects & clients, Start date 9/20174, 10 hrs per month, compensated via client paid fees

©2018 FINRA. All rights reserved. Report# 23920-66040 requested on Friday, January 19, 2018 by RANDALL ERIC FRITTS





www.adviserinfo.sec.gov

# End of Report

This page is intentionally left blank.

©2018 FINRA. All rights reserved. Report# 22920-65040 requested on Friday, January 19, 2018 about RANDALL ERIC FRITTS

# THOMAS KEITH WORMSLEY

CRD#: 4976680

(B) Broker *Regulated by FINRA*

(IA) Investment Adviser ❸ ☑ Visit SEC Site

**SECURITIES AMERICA, INC.**
CRD#: 10205
112 GLENLEIGH CT STE 2
KNOXVILLE, TN 37934

| **0** | **12** Years of Experience | **4** | **7** |
|---|---|---|---|
| Disclosures | **4** Firms | Exams Passed | State Licenses |

📄 **Examinations**

▱ **State Securities Law Exam**

| | |
|---|---|
| Series 65 - Uniform Investment Adviser Law Examination | Apr 6, 2012 |
| Series 63 - Uniform Securities Agent State Law Examination | Oct 10, 2005 |

▱ **General Industry/Products Exam**

| | |
|---|---|
| Series 7 - General Securities Representative Examination | Dec 23, 2008 |
| Series 6 - Investment Company Products/Variable Contracts Representative Examination | Sep 29, 2005 |

⚙ **Licenses**

**State Registrations**

| | |
|---|---|
| (B) Florida | (B) Tennessee |
| (B) Indiana | (B) Texas |
| (B) Maryland | (B) West Virginia |
| (B) Missouri | |

**SRO Registrations**

▱ FINRA

⚙ **Current Employments**

**SECURITIES AMERICA, INC. (CRD#:10205)**

⚑ 112 GLENLEIGH CT STE 2, KNOXVILLE, TN 37934

Registered with this firm since 12/22/2014

⚙ **Broker Registration History**

| | Name | Location |
|---|---|---|
| 10/03/2012 - 11/18/2014 | QUESTAR CAPITAL CORPORATION (CRD#:43100) | KNOXVILLE, TN |
| 01/02/2008 - 10/03/2012 | ING FINANCIAL PARTNERS, INC. (CRD#:2882) | KNOXVILLE, TN |
| 09/30/2005 - 01/08/2008 | THRIVENT INVESTMENT MANAGEMENT INC. (CRD#:18387) | KNOXVILLE, TN |

2018 FEB -2 PM 4: 13
KNOX COUNTY CIRCUIT COURT
CATHERINE F. SHANKS, CLERK
FILED

EXHIBIT
C

**Additional Information**

The content of this summary, and the available detailed report, is governed by FINRA Rule 8312, and is primarily based on information filed on uniform registration forms. Rule 8312, amendments to the rule and notices related to U.S. Securities and Exchange Commission approval orders, can be viewed here.

State regulators are governed by their public records laws (not FINRA Rule 8312), and may provide information not in BrokerCheck, including information no longer required to be reported or updated on uniform registration forms due, for example, to its age or final disposition. You may contact your state regulator to request this additional information.

Click here for more information about how to check on an investment professional.

(B) Broker

A brokerage firm, also called a broker-dealer, is in the business of buying and selling securities – stocks, bonds, mutual funds, and certain other investment products – on behalf of its customer (as broker), for its own bank (dealer), or both.
Individuals who work for broker-dealers - the sales personnel are commonly referred to as brokers.

(IA) Investment Adviser

An investment adviser is paid for providing advice about securities to clients. In addition, some investment advisers manage investment portfolios and offer financial planning services.
It is common for a financial professional to act as both a broker and an investment adviser. Because of this, we include investment advisers on BrokerCheck, and provide links to the SEC's Investment Adviser Public Disclosure (IAPD) website so you can research further.

(PR) Previously Registered

A Previously Registered broker or brokerage firm is not currently licensed to act as a broker (buying and selling securities on behalf of customers) or as an investment adviser (providing advice about securities to clients). They may still be able to offer other investment-related services if properly licensed to do so. Click here to learn more.

Disclosures

Disclosures can be any customer complaints or arbitrations, regulatory actions, employment terminations, bankruptcy filings and any civil or criminal proceedings that they were a part of.

BrokerCheck Terms of Use

©2018 FINRA, All Rights Reserved

FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.

Privacy  |  Legal  🐦  in

FOR YOUR RECORDS

Property ID : Owlwood Estates - Holmby Hills, CA
Principal   : $215,000.00
Int. Rate   : 6.00%

## CANCELLATION OF PROMISSORY NOTE AND LOAN AGREEMENT

This Cancellation of Promissory Note and Loan Agreement (this "Agreement") is entered into as of this 28th day of April, 2017, by and among **WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC**, a Delaware limited liability company having an address of 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California, its successors and assigns (herein, "Borrower"), and **ANNE M. WUNSCHEL**, an individual having an address of 114 Geya Circle, Loudon, Tennessee 37774 (herein, "Lender").

### R E C I T A L S

WHEREAS, Borrower executed that certain Promissory Note dated March 24, 2016, in the original principal amount of Two Hundred Fifteen Thousand and 00/100 Dollars ($215,000.00) payable to the order of Lender (the "Note");

WHEREAS, in connection with the execution of the Note, Borrower and Lender entered into that certain Loan Agreement dated March 24, 2016;

WHEREAS, Borrower has fully paid, performed, and satisfied its obligation under the Note and the Loan Agreement;

WHEREAS, the parties hereto agree that there are no obligations outstanding among the parties whatsoever relating to the Note and the Loan Agreement; and

NOW, THEREFORE, based on the foregoing under the conditions stated below, the parties hereto desire to cancel the Note and to cancel the Loan Agreement.

### A G R E E M E N T

The Note and the Loan Agreement are hereby terminated and canceled and are of no further force and effect. Lender hereby agrees promptly to return the original Note to Borrower.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date first written above.

LENDER:

BORROWER:

WOODBRIDGE MORTGAGE
INVESTMENT FUND 3A, LLC

*Anne M. Wunschel*
ANNE M. WUNSCHEL

By: _____
Robert Reed
Its Authorized Representative

EXHIBIT
D

## RELEASE OF ASSIGNMENT AND COLLATERAL ASSIGNMENT
### (RELATING TO PROPERTY LOCATED AT 141 SOUTH CAROLWOOD DRIVE, HOLMBY HILLS, CALIFORNIA)

**KNOW ALL MEN BY THESE PRESENTS,** that ANNE M. WUNSCHEL, an individual having an address of 114 Geya Circle, Loudon, Tennessee 37774, her successors and assigns (the "<u>Lender</u>") **DOES HEREBY CERTIFY** that the indebtedness and all obligations evidenced by the following identified Promissory Note, Assignment of Promissory Note and Mortgage, and Collateral Assignment of Note, Mortgage, and Other Loan Documents, have been fully paid, performed, satisfied, and does hereby consent and direct that the same be released and forever discharged:

1. That certain Promissory Note dated March 24, 2016, in the original principal amount of Two Hundred Fifteen Thousand and 00/100 Dollars ($215,000.00) made by Woodbridge Mortgage Investment Fund 3A, LLC, a Delaware limited liability company having an address of 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California ("<u>Woodbridge</u>"), payable to the order of Lender;

2. That certain Assignment of Promissory Note and Mortgage effective as of September 6, 2016, by Woodbridge in favor of Lender (the "<u>Assignment</u>"); and

3. That certain Collateral Assignment of Note, Mortgage and Other Loan Documents effective as of September 6, 2016, by Woodbridge in favor of Lender, with respect to:

   a. That certain Deed of Trust, Security Agreement, and Fixture Filing with Assignment of Rents and Agreements made as of September 6, 2016 entered into by Sturmer Pippin Investments, LLC as the Trustor, naming Fidelity National Title Company as the Trustee, recorded on September 16, 2016 as Instrument No. 20161119936 of the Official Records in the County Recorder's Office of Los Angeles County, California.

   b. That certain Promissory Note Secured by Deed of Trust in the original principal amount of Sixty-Three Million and 00/100 Dollars ($63,000,000.00) dated as of September 6, 2016, made by Sturmer Pippin Investments, LLC, and payable to the order of Woodbridge Mortgage Investment Fund 3A, LLC.

**IN WITNESS WHEREOF,** the undersigned have caused this instrument to be executed as of this ___ day of ___May___, 20_15_

_Anne M. Wunschel_
ANNE M. WUNSCHEL

EXHIBIT
E

Prepared by, and after recording,
return to:

Robert Reed, Esq.
WOODBRIDGE MORTGAGE
INVESTMENT FUND 3A, LLC
54 Hartford Turnpike
Tolland, Connecticut 06084

Property Address:
**141 South Carolwood Drive**
**Holmby Hills, California**

State of Connecticut          County of Tolland
I certify this to be a complete, exact and true copy of
the original document.
certified this *20* day of *June*          , 20*17*

*Pamela m Parsons*
PAMELA M. PARSONS, Notary Public
My Commission Expires May 31, 2020

This space for Recorder's use

---

## RELEASE OF COLLATERAL ASSIGNMENT OF NOTE, MORTGAGE, AND OTHER LOAN DOCUMENTS

KNOW ALL MEN BY THESE PRESENTS, that **ANNE M. WUNSCHEL**, an individual having an address of 114 Geya Circle, Loudon, Tennessee 37774, her successors and assigns (the "Collateral Assignee") is the owner and holder of that certain COLLATERAL ASSIGNMENT OF NOTE, MORTGAGE, AND OTHER LOAN DOCUMENTS, (the "Collateral Assignment"), effective as of September 6, 2016, made and given by **WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC**, a Delaware limited liability company having an address of 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 (the "Collateral Assignor") in favor of Collateral Assignee, recorded on in the Official Records in the County Recorder's Office of Los Angeles County, California on November 3, 2016 as Instrument No. 20161372549 with respect to:

1.   That certain Deed of Trust, Security Agreement, and Fixture Filing with Assignment of Rents and Agreements made as of September 6, 2016 entered into by Sturmer Pippin Investments, LLC as the Trustor, naming Fidelity National Title Company as the Trustee, recorded on September 16, 2016 as Instrument No. 20161119936 of the Official Records in the County Recorder's Office of Los Angeles County, California.

2.   That certain Promissory Note Secured by Deed of Trust in the original principal amount of Sixty-Three Million and 00/100 Dollars ($63,000,000.00) dated as of September 6, 2016, made by Sturmer Pippin Investments, LLC, and payable to the order of Woodbridge Mortgage Investment Fund 3A, LLC.

NOW, in consideration of the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable consideration, the adequacy and receipt of which is hereby acknowledged, the Collateral Assignee does hereby grant and release unto the Collateral Assignor, its successors and assigns, any lien or interest that the Collateral Assignee may have under the Collateral Assignment in and to (i) the Note, Mortgage, and Other Loan Documents described therein and (ii) the premises described in **SCHEDULE A** hereto; and does hereby release the Collateral Assignment.

IN WITNESS WHEREOF, the undersigned have caused this Release of Collateral Assignment of Note, Mortgage and Other Loan Documents to be executed on this *20* day of *June*          , 20*17*

COLLATERAL ASSIGNEE:                                    COLLATERAL ASSIGNOR:

                                                        **WOODBRIDGE MORTGAGE**
                                                        **INVESTMENT FUND 3A, LLC**

*Anne M. Wunschel*                                      By: _____
ANNE M. WUNSCHEL                                        Robert Reed
                                                        Its Authorized Representative

EXHIBIT
F

STATE OF Tennessee )
                    )  ss.
COUNTY OF Knox      )

On this __1__ day of __May_____, 20_1_7_ before me, the undersigned notary public, personally appeared ANNE M. WUNSCHEL to me known and known by me to be the individual that executed the within and foregoing RELEASE OF COLLATERAL ASSIGNMENT OF NOTE, MORTGAGE, AND OTHER LOAN DOCUMENTS on their own behalf, and acknowledged said instrument and the execution thereof, to be their free act and deed.

Notary Public
Name: _Carita N. Baker_
My Commission Expires: _3-31-2021_
(SEAL)

STATE OF CONNECTICUT )
                      )  ss.
COUNTY OF TOLLAND     )

On this __20__ day of __June_____, 20_1_7_ before me, the undersigned notary public, personally appeared Robert Reed, Authorized Representative of WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC, to me known and known by me to be the authorized signatory of said company that executed the within and foregoing RELEASE OF COLLATERAL ASSIGNMENT OF NOTE, MORTGAGE, AND OTHER LOAN DOCUMENTS on behalf of said company, and acknowledged said instrument and the execution thereof, to be his free act and deed as such authorized signatory and the free act and deed of said company.

Notary Public

PAMELA M. PARSONS
*NOTARY PUBLIC*
MY COMMISSION EXPIRES MAY 31, 2020

SCHEDULE A

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 21 OF TRACT NO. 8683, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 110, PAGES 32 THROUGH 35, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 4359-021-016 (REF: 10100 W. Sunset)

PARCEL 2:

PARCEL 2A:

LOT 1 OF TRACT NO. 8252, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 183, PAGES 23 AND 24, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THAT PORTION OF SAID LAND INCLUDED WITHIN CAROLWOOD DRIVE, FORMERLY MONOVALE DRIVE, AS SHOWN ON TRACT MAP 8683, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 110, PAGES 32 THROUGH 35, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AS VACATED BY RESOLUTION TO VACATE NO. 03-1400862, RECORDED JULY 8, 2004, AS INSTRUMENT NO. 04-1743553, OF OFFICIAL RECORDS.

APN: 4359-021-017 (REF: 10060 W. Sunset)

PARCEL 2B:

LOT 2 OF TRACT NO. 8252, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 183, PAGES 23 AND 24, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2C:

THAT PORTION OF LOT 1 OF TRACT NO. 8252, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 183, PAGES 23 AND 24, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, WHICH IS INCLUDED WITHIN THAT PORTION OF CAROLWOOD DRIVE, FORMERLY MONOVALE DRIVE, AS SHOWN ON TRACT MAP 8683, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 110, PAGES 32 THROUGH 35, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AS VACATED BY RESOLUTION TO VACATE NO. 03-1400862, RECORDED JULY 8, 2004, AS INSTRUMENT NO. 04-1743553, OF OFFICIAL RECORDS.

APN: 4359-021-018 (REF: 141 S. Carolwood)

## PROMISSORY NOTE

April 28, 2017
Sherman Oaks, California

$215,000.00

FOR VALUE RECEIVED, the undersigned, **WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC**, a Delaware limited liability company having an office and a mailing address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 (hereinafter referred to as the "<u>Borrower</u>") does hereby promise to pay to the order of **ANNE M. WUNSCHEL**, an individual having an address of 114 Geya Circle, Loudon, Tennessee 37774 (hereinafter referred to as "<u>Lender</u>"), at such place as the Lender may designate by written notice to Borrower, the principal sum of Two Hundred Fifteen Thousand and 00/100 Dollars ($215,000.00), together with interest on all unpaid balances beginning as of the date hereof, at the fixed rate per annum as set forth in Section 1 hereof.

1. **Interest Rate.** The unpaid balance of the principal sum of Two Hundred Fifteen Thousand and 00/100 Dollars ($215,000.00) shall bear interest from the date hereof through June 1, 2018, at a fixed rate of interest equal to six and 00/100 percent (6.00%) per annum. After June 1, 2018, the unpaid balance of this Note shall bear interest at a fixed rate equal to nine and 00/100 percent (9.00%) per annum. The rate of interest charged hereunder shall never exceed the maximum amount, if any, allowable by law. Interest shall be charged on the principal balance from time to time outstanding on the basis of the actual number of days elapsed computed on the basis of a 360 day year.

2. **Default Interest Rate.** During the continuance of any Event of Default (as more particularly defined in Paragraph 6 below) under this Note by acceleration or otherwise, interest shall accrue from and after such Event of Default at four (4) percentage points above the interest rate then in effect hereunder (the "<u>Default Interest Rate</u>").

3. **Repayment.** Borrower promises to pay the interest and principal on this Note, as set forth below:

> Monthly payments of interest shall be made commencing on June 1, 2017 and continuing on the same day of each and every month to occur thereafter, both before and after maturity by acceleration or otherwise.

> The entire principal balance plus accrued and unpaid interest thereon, and all other sums and charges due to the Lender hereunder, unless sooner paid, shall be due and payable on September 1, 2018 (the "<u>Maturity Date</u>"). Upon and after the eighth (8th) day following Borrower's receipt of written notice from Lender of Borrower's failure to pay the entire principal balance plus accrued and unpaid interest on the Maturity Date as required, any outstanding amounts due under this Note shall bear interest at a fixed rate of twenty-four and 00/100 percent (24.00%) per annum.

4. **Application of Payments.** All payments pursuant to this Note shall be made in legal tender of the United States of America and shall be applied first to the payment of delinquency or late charges, if any; second, to the payment of accrued and unpaid interest on this Note; and third, the balance on account of the principal of this Note.

5. **Cure Period and Notice of Default.** Failure of Borrower to pay by its due date any installment of the principal or of interest within thirty (30) days from the date the same becomes due and payable, shall constitute a "<u>Payment Default</u>" under this Note. Borrower shall have a cure period of not less

EXHIBIT
G

than thirty (30) days after receipt of written notice ("Notice of Default") of any alleged breach or Payment Default under the terms of this Note to cure the same.

6. **Event of Default.** Any alleged breach or Payment Default under this Note that is not fully cured following the expiration of the applicable cure period specified in a given Notice of Default shall constitute an event of default ("Event of Default") under this Note.

7. **Waiver of Rights.**

   a. BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY COURT AND IN ANY SUIT ACTION OR PROCEEDING OR ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE FINANCING TRANSACTIONS OF WHICH THIS NOTE AND THE COLLATERAL ASSIGNMENT DOCUMENTS (AS DEFINED BELOW) ARE A PART AND/OR THE ENFORCEMENT OF ANY OF LENDER'S RIGHTS AND REMEDIES. BORROWER ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, VOLUNTARILY AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER.

   b. Borrower hereby waives diligence, demand, presentment for payment, protest and notice of protest, and notice of any renewals or extensions of this Note, and agrees that the time for payment of this Note may be changed and extended at Lender's sole discretion, without impairing its liability thereon, and further consents to the release of any party liable for this obligation, or the release of all or any part of the collateral given as security for the payment of this Note, without affecting its liability with respect hereto.

8. **Lender's Rights.** Lender's rights hereunder shall be cumulative and not exclusive and may be exercised at the sole discretion of Lender with respect to priority, order and type of collateral or security realized upon or applied toward the indebtedness evidenced hereby until this Note and all accrued and unpaid interest and other sums and charges due hereunder shall have been paid in full. Further, no failure on the part of Lender to exercise any right or remedy hereunder, whether before or after the occurrence of an Event of Default hereunder, shall constitute a waiver thereof, and no waiver of any past default shall constitute waiver of any future default or of any other default.

9. **Prepayment.** The Borrower shall have the right to prepay this Note in whole or in part at any time without penalty.

10. **Binding Effect.** This Note shall bind the successors and assigns of Borrower and shall inure to the benefit of the Lender, its successors and assigns.

11. **Captions and Section Headings.** The captions and section headings used in this Note are for convenience only and shall not be used to interpret, modify or affect in any way the covenants and agreements herein contained.

12. **Severability.** In the event that any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part, or in any respect, or in the event that any one or more of the provisions of this Note shall operate or would prospectively operate, to invalidate this Note, then the remaining provisions of this Note shall remain operative and in full force and effect, shall be valid, legal and enforceable and shall in no way be affected, prejudiced or disturbed thereby.

2

```
Property ID : Owlwood Estates - Holmby Hills, CA
Principal   : $215,000.00
Int. Rate   : 6.00%
```

13. **Governing Law.** This Note shall be governed by and construed in accordance with the laws of the State of Delaware.

14. **No Assignment.** Neither this Note, the Loan Agreement of even date herewith between Borrower and Lender, nor all other instruments executed or to be executed in connection therewith (collectively, the "Collateral Assignment Documents") are assignable by Lender without the Borrower's written consent and any such attempted assignment without such consent shall be null and void.

15. **Commercial Transaction.** Lender and Borrower each acknowledge and stipulate that the Loan is a commercial transaction.

16. **Security.** This Note will be secured inter alia by the Collateral Assignment Documents upon execution thereof.

WOODBRIDGE MORTGAGE
INVESTMENT FUND 3A, LLC

By:
Robert Reed
Its Authorized Representative

Accepted and Agreed to by Lender:

ANNE M. WUNSCHEL

3

```
Property ID : Owlwood Estates - Holmby Hills, CA
Principal   : $215,000.00
Int. Rate   : 6.00%
```

## LOAN AGREEMENT

THIS LOAN AGREEMENT (this "Agreement") made on this April 28, 2017, by and between ANNE M. WUNSCHEL, an individual having an address of 114 Geya Circle, Loudon, Tennessee 37774 (hereinafter referred to as the "Lender") and WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC, a Delaware limited liability company, having an office at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 ("Woodbridge").

## WITNESSETH:

WHEREAS, Lender wishes to make a loan (the "Loan") to Woodbridge to fund, in part, a loan to a third-party borrower, as more fully defined below (the "Pledged Loan"); and

WHEREAS, Lender advanced to Woodbridge a portion of the funds that, with other funds from Woodbridge, will be used to make the Pledged Loan; and

WHEREAS, Lender acknowledges that Woodbridge has executed or intends to execute other notes and loan agreements to fund the Pledged Loan on a pari passu basis with other lenders; and

WHEREAS, Woodbridge and Lender have agreed to the foregoing transaction on the terms and conditions and in reliance upon the representations and warranties of Woodbridge and Lender hereinafter set forth:

NOW, THEREFORE, in consideration of the foregoing and in further consideration of the mutual covenants herein contained, the parties hereto agree as follows:

1. Lender has agreed to lend Woodbridge the sum of Two Hundred Fifteen Thousand and 00/100 Dollars ($215,000.00). The foregoing obligation shall be evidenced by Woodbridge's promissory note to Lender, in the original principal amount of Two Hundred Fifteen Thousand and 00/100 Dollars ($215,000.00), in the form of Exhibit A hereto and made a part hereof (as the same may be amended or modified from time to time, the "Note"), with appropriate insertion of dates.

The Note shall bear interest at a rate equal to six and 00/100 percent (6.00%) per annum, subject to such default rates as may be set forth in the Note; provided, however, that the rate of interest charged thereunder shall never exceed the maximum amount, if any, allowable by law. Interest shall be payable as provided in the Note and shall be charged on the daily outstanding principal balance on the basis of the actual days elapsed and on a three hundred sixty (360) day year.

Interest shall be payable as provided in the Note. The entire outstanding principal balance of the Note shall be due and payable in full on September 1, 2018 unless sooner prepaid. Woodbridge may prepay the Note without penalty at any time.

2. **Security Interest.** Woodbridge hereby grants to the Lender a security interest in all of the Woodbridge's present and future right, title and interest in and to any and all of the following (the "Collateral"):

(a) That certain loan in the principal amount of Sixty-Three Million and 00/100 Dollars ($63,000,000.00) (the "Pledged Loan") extended or to be extended to Sturmer Pippin Investments, LLC (the "Borrower") secured by a first priority lien on the real property located at 141 South Carolwood Drive, Holmby Hills, California (the "Premises");

(b) The promissory note evidencing the Pledged Loan (the "Underlying Note");

(c) The mortgage or deed of trust securing the Pledged Loan with an interest in the Premises (the

1

EXHIBIT
H

"Underlying Mortgage"); and

(d) Title insurance policies and such other instruments or documentation as may be executed and delivered to Woodbridge in conjunction with the Pledged Loan (said Underlying Note, Underlying Mortgage and other associated loan documents collectively hereafter referred to as the "Loan Documents").

(e) Upon the consummation of the Pledged Loan, Woodbridge will execute and deliver to Lender collateral assignment documents substantially in the form attached hereto as Exhibits B and C.

(f) Lender acknowledges that they are only providing the financing for a portion of the Pledged Loan and, therefore, Woodbridge retains the right to execute other notes, loan agreements, assignments, and collateral assignments in favor of other lenders as may be necessary to fund the Pledged Loan secured by the Collateral on a pari passu basis with such other lenders. Lender further agrees that it, and any such other lenders, shall execute an Intercreditor Agreement substantially in the form attached hereto as Exhibit D in order to confirm that their interests in the Collateral are of equal priority.

3.  **Representations and Warranties.**

(a) Woodbridge represents and warrants to Lender that Woodbridge has or will have good and marketable title to the Pledged Loan and the Collateral free from any adverse liens, security interests or encumbrances on record as of the date of the Pledged Loan.

(b) The execution and delivery of the Note, this Agreement, and every other agreement, instrument or document executed and delivered to Lender by Woodbridge pursuant to the terms hereof, are valid, legal and binding upon it and enforceable in accordance with their respective terms.

(c) All information furnished or to be furnished by Woodbridge pursuant to the terms hereof will not, at the time the same is furnished, contain any untrue statement of a material fact and will not omit to state a material fact necessary to make the information so furnished, in the light of the circumstances under which such information is furnished, not misleading.

(d) Lender represents and warrants to Woodbridge that: (i) the Loan Documents and the Pledged Loan they evidence constitute a commercial loan transaction and are not for investment purposes; and (ii) Lender has reviewed the Loan Documents and the associated other information on the Borrower of the Pledged Loan, and has had the opportunity to review said documents and information with its own legal counsel, and has had sufficient access to all of said documents and information to allow it to make its own credit decision with respect to the Pledged Loan, and has, in fact, made its own credit decision in making the Loan.

4.  **General Provisions.**

(a) This Agreement is an integrated document and all terms and provisions are embodied herein and shall not be varied by parol;

(b) This Agreement is made, executed and delivered in the State of Delaware and it is the specific desire and intention of the parties that it shall in all respects be construed under the laws of the State of Delaware;

(c) The captions for the paragraphs contained in this Agreement have been inserted for convenience only and form no part of this Agreement and shall not be deemed to affect the meaning or construction of any of the covenants, agreements, conditions or terms hereof;

```
Property ID : Owlwood Estates - Holmby Hills, CA
Principal   : $215,000.00
Int. Rate   : 6.00%
```

**(d)** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, provided, however, that Lender shall not assign, voluntarily, by operation of law or otherwise, any of its rights hereunder without the prior written consent of Woodbridge and any such attempted assignment without such consent shall be null and void;

**(e)** No delay or failure of Lender in exercising any right, power or privilege hereunder shall affect such right, power or privilege, nor shall any single or partial exercise preclude any further exercise thereof or the exercise of any other rights, powers or privileges; and

**(f)** This Agreement, the security interest hereby granted to Lender by Woodbridge and every representation, warranty, covenant, promise and other then herein contained shall survive until the Note has been paid in full.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK, SIGNATURE PAGE TO FOLLOW]**

3

```
Property ID : Owlwood Estates - Holmby Hills, CA
Principal   : $215,000.00
Int. Rate   : 6.00%
```

**IN WITNESS WHEREOF,** the parties hereto have hereunto set their hands and seals, the day and year first above written.

Signed, Sealed, and Delivered
in the Presence of:

_Richard Enos_
(Witness)

_Carsta N. Baker_
(Witness)

_Anne M. Wunschel_
ANNE M. WUNSCHEL

_Pamela M. Parsons_

_Lily Belder_

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3A, LLC**

By: _____
Robert Reed
Its Authorized Representative

4